UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEALIX INFUSION THERAPY, INC., et al., | § § § § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-08-cv-3262 |
| | § | |
| HUMAN ARC CORPORATION OF OHIO, et al., | § § § | |
| | § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Dismiss. (Doc. No. 10.)   After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion should be denied.

**I.      BACKGROUND**

**A.  The HEALIX Trademark**

Plaintiffs Healix, Inc. and Healix Infusion Therapy, Inc. ("Plaintiffs") assert claims against Defendants Human Arc Corporation of Ohio and Human Arc Corporation ("Defendants") for trademark infringement under federal and state law, violation of the Texas Anti-Dilution statute, false designation of origin, injury to business reputation and/or trademarks, and common law unfair competition.

Plaintiffs allege that they have used the HEALIX trademark since 1989 and today use the trademark in connection with the sale of drugs, supplies, and durable medical equipment, and in connection with practice management services focused on billing and collecting on behalf of providers in the healthcare industry. (Pls. Compl. ¶ 6.) Plaintiffs

1

are the lawful owners of the several federal registrations for the HEALIX trademark, the first of which they obtained in 1999. (*Id.* at ¶ 7.) For two decades, Plaintiffs, both Texas corporations, have maintained exclusive rights to the HEALIX trademark. Plaintiffs currently operate in twenty states, have approximately eighty sites, and conduct national marketing campaigns. (*Id.* at ¶ 9.) Plaintiffs have invested millions of dollars in promoting goods and services associated with the HEALIX trademark. Plaintiffs contend that the HEALIX trademark is highly distinctive, and the mark, and the goodwill associated with it, have become valuable assets. (*Id.* at ¶¶ 11-13.) Plaintiffs also own domain names which include the name "healix," such as www.healix.net and www.healixinfusionotherapy.com.

Plaintiffs aver that Defendants infringe on the HEALIX trademark without Plaintiffs' express authorization. Defendants recently began using "Helixx" to identify its software-based medical administration services. Defendants' use of this term allegedly began long after Plaintiffs' use of the HEALIX trademark. (*Id.* at ¶ 15.) On May 14, 2008, Defendants filed two applications for federal registration of a HELIXX trademark. In their application, Defendants indicated that they intend to use the HELIXX mark in connection with "administration of reimbursement programs, namely, assisting health-care providers to establish eligibility and financial evaluations for parties in reimbursement of medical services for government insurers" and "computer software for screening patients for, and enrolling patients in, third-party payer programs and non-healthcare-related assistance programs." (*Id.* at ¶ 16.) On October 15, 2008, Plaintiffs sent a letter to Michael J. Baird, chief executive officer of Human Arc, explaining Plaintiffs' rights in the HEALIX trademark and the likelihood of confusion that would

result from Defendants' use of the HELIXX trademark.  Plaintiffs allege that Defendants have nevertheless continued the infringing activity.  (*Id.* at ¶ 18.)

Plaintiffs contend that Defendants' use of the HELIXX mark will likely create confusion.  Defendants do business in several of the same states as Plaintiffs and offer their services in similar channels of commerce as to those used by Plaintiffs.  (Pls. Compl. ¶ 20.)  Both companies offer services in the healthcare industry, and Plaintiffs aver that, while the services differ somewhat, there is enough overlap in services and customers to create confusion.  (*Id.* at ¶ 21.)

### B.  Jurisdictional Facts

In their Complaint, Plaintiffs allege that the Court has personal jurisdiction over Defendants because they have deliberately directed their activities to Texas in the form of an interactive website that is integral to their business.  Plaintiffs further allege that Defendants use the HELIXX trademark to conduct transactions with people in Texas, including for receipt of orders and confirmations, as well as other messages.  Finally, Plaintiffs suggest that Defendants have engaged in other activities using the HELIXX trademark in Houston and elsewhere in Texas.

Defendants respond that they are Ohio corporations with their principal places of business located in Cuyahoga County, Ohio.  (Reedy Aff. ¶¶ 2-3.)  Defendants do not have offices, dealers, or agents in Texas, have not appointed a registered agent for service of process in Texas, have no Texas subsidiaries, and do not maintain inventory, corporate files, or other financial accounts in Texas.  (Reedy Aff. ¶¶ 10-16.)  Two employees of Defendants reside in Texas, but they work out of their homes based on an arrangement the employees sought.  The employees were not assigned to Texas by Defendants, and

their work does not involve the HELIXX goods or services disputed in the case. (Reedy Aff. ¶ 18.) Defendants do provide claim management services for customers in Houston and San Antonio, but the services do not involve goods or services under the HELIXX mark and the services are not provided in the state of Texas. (Reedy Aff. ¶ 17.)

Defendants admit to having a website, but they argue that it is primarily informational and that no consumer sales are conducted over the website, and that none of their web pages are directed or targeted at residents of Texas. (Reedy Aff. ¶ 5.) No development work for HELIXX was conducted in Texas, and Defendants did not contract with any Texas vendors during the course of development of the HELIXX product. (Reedy Aff. ¶ 9.)

Defendants argue that they have conducted minimal commercial activity in Teas regarding the HELIXX products or services and have not distributed HELIXX products to Texas residents. These activities have been limited to sending, as part of a mass mailing to all attendees of a 2008 conference, postcards and follow-up letters to three attendees who were Texas residents. The materials described the HELIXX products and services, but were not modified for or unique to Texas. Defendants made no further contact with these attendees. (Reedy Aff. ¶ 8.)

Plaintiffs counter that Defendants have more than one website, www.humanarc.com and www.helixxha.com. Plaintiffs contend that the first website, www.humanarc.com, is directed at Texas residents because "Texas" is included in the drop-down menu on several web pages that allow users to select their state in order to solicit information from or provide information to Defendants. Plaintiffs also alleged that Texas residents can sign up for "Helixx webinars" on this site. The second website,

4

helixxha.com, is password protected, and Plaintiffs argue that they should be allowed to conduct discovery to view its contents. Plaintiffs also point out that the word "helixx" is in the domain name of the second website. Additionally, Plaintiffs have attached documents from a July 2008 conference that occurred in Houston at which Jill Spencer, Defendants' Vice President of Business Development, spoke. Defendants were a gold level sponsor of the event. Defendants admit that Spencer participated in this event, but she did not discuss HELIXX in her presentation, distribute materials that discussed the HELIXX service, or display the HELIXX mark on any conference materials. (Doc. No. 13, Ex. B-1 ¶ 8.) Further, Defendants did not invite the conference attendees, and only two of the sixty-three pre-registrants listed Texas addresses. (Doc. No. 13, Ex. B-1, ¶¶ 6 and 9.) Defendants among several sponsors at similar conferences over the past three years, and this is the only such conference to have been held in Texas. (Doc. No. 13, Ex. B-1 ¶ 4.)

## II.   ANALYSIS

### A. Standard

A court may exercise personal jurisdiction over a nonresident defendant in a diversity suit only to the extent permitted by the laws of Texas and considerations of constitutional due process. *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Because the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, the court's constitutional due process inquiry into personal jurisdiction

also serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command-Aire Corp.*, 963 F.3d. at 93-94.

To comport with constitutional due process, Plaintiffs must show: (1) Defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that Defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir.1990)); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."). The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quotations omitted). General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id.*

While the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, a *prima facie* showing suffices, and the plaintiffs need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. Insta-*

*Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Moreover, for purposes of this Order, the Court must view all facts contested in the affidavits in favor of jurisdiction. *Id.*; *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).

### B. General Jurisdiction

The Court first addresses whether it can exercise general jurisdiction over Defendants. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submerisble Sys. Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Id.* (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction. *Id.* (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Plaintiff has not presented sufficient evidence to establish this Court's general jurisdiction over Defendants. Defendants' contacts with the state essentially consist of mailings to three Texas residents, claims services for Texas residents in Houston and San Antonio, two Texas employees who work from home, Spencer's presentation at a Houston trade conference, and the operation of two websites.

As to the first five of these factors, the Fifth Circuit has regularly held that general jurisdiction is not warranted "where the evidence shows, at best, that the defendant sold, on isolated occasions, products to entities located in Texas, ... that companies used the defendant's products for projects in Texas, and that the defendant's personnel made field visits to Texas between December 1992 and December 1993." *Johnston*, 523 F.3d at 611-612 (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (internal citations and quotations omitted)).   In *Johnston*, the defendants sold $140,000 worth of goods, over a five year period, to Texas residents, which accounted for three percent of the defendant's business.  The defendant's employees also occasionally traveled to trade conferences in Texas.  The Fifth Circuit found these factors insufficient to establish general jurisdiction over the defendants.  Similarly, in the instant case, the letters and postcards Defendants sent to three Texas residents as part of a national mailing campaign, and Spencer's attendance at a single trade conference in Houston, will not support general jurisdiction.  While Defendants admit to having some claims services customers located in Texas, they do not actually provide these services in Texas.

Further, in *Johnston*, the defendants had two employees living in Texas.  While the Fifth Circuit acknowledged that their presence in the state was continuous, it found that it was not substantial enough to create jurisdiction in Texas because neither employee worked with Texas customers, both reported to supervisors outside of Texas, and both were hired as part of an acquisition and allowed to continue living in Texas because they could perform their job from anywhere in the world.  Defendants also have two Texas employees who work as "teleworkers."  Like the employees in *Johnston*, Defendants did not assign them to live in Texas, but rather allow them to work from

home.  The Court does not believe that these employees' presence is sufficient to establish general jurisdiction.

Plaintiffs also argue that the Court should exercise general jurisdiction over Defendants because they operate two websites that are accessible to Texas residents.  To determine whether a party's Internet presence warrants jurisdiction in a particular forum, the Fifth Circuit evaluates the "nature and quality of commercial activity that an entity conducts over the Internet." *Mink v. AAAA Development, LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)).  In *Mink*, the Fifth Circuit adopted the three classifications of websites delinated by the district court in *Zippo* to determine whether the site warranted jurisdiction in a particular form.  190 F.3d at 336.  In the first category, the defendant merely establishes a passive website that does nothing more than advertise on the Internet.  Personal jurisdiction is not proper.  *Id.* (citing *Zippo*, 952 F.Supp. at 1124).  In the second category, the defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet." *Id.* (quoting *Zippo*, 952 F.Supp. at 1124).  Personal jurisdiction is proper in this situation.  *Id.* (citations omitted).  The final category falls somewhere in the middle of the spectrum, and includes cases where the defendant has a website that allows a user to exchange information with a host computer. "The exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (quoting *Zippo*, 925 F.Supp. at 1124).  The Fifth Court considered the website at issue in *Mink* to be completely passive, even though it contained a printable mail-in order form, a toll-free

number, and an email address through which users could contact the defendants. Orders were not directly taken through the website. 190 F.3d at 337.

Defendants have two websites. The first, www.humanarc.org, has several forms that allow users to request information from Defendants by providing their address. Users are allowed to select "Texas" from a drop-down menu of states when identifying their residence. As such, Plaintiffs allege that the website is targeting Texas residents. Users can also take a web based seminar, or "webinar," on the website to learn more about Defendants' products. The second website, www.helixx.net, is password protected—its content is not, therefore, readily available to the general public; as such, the Court considers it passive. (Doc. No. 20 ¶ 6.)

The Court considers the first website, www.humanarc.org, to be in the middle of the *Zippo* spectrum. It is not completely passive, as users are allowed to send their contact information to Defendants; however, there is no evidence that Defendants are using the website to regularly transact business. Considering the website's level of interactivity and its commercial content, the Court finds that this site does not constitute the "continuous and systematic contacts" necessary for general jurisdiction. While the site allows users to provide their contact information to Defendants, it does not allow them to purchase products from or enter into contracts with Defendants. Further, the "webinar" appears to be merely a passive advertisement with a one-way exchange of information. (Doc. No. 20, Ex. 1.) Sister courts have similarly found that websites which allow users to provide their addresses to a company to receive further information, without more, are not sufficient to support personal jurisdiction. *See Up North Plastics, Inc. v. Miller-St. Nazianz, Inc.*, No. 4-cv-2032, 2005 WL 106480, at *5 (N.D.Tex. Jan. 8,

2005); *Amazon Tours, Inc. v. Wet-A-Line Tours, LLC*, No. 3-01-cv-1433-R, 2002 WL 230895, at *3 (N.D.Tex. Jan. 31, 2002).

### C. Specific Jurisdiction

Plaintiffs next argue that the Court has specific jurisdiction over Defendants. The Fifth Circuit has recognized a three step process for determining specific jurisdiction: "1) whether the defendant ... purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Stroman Realty Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)). Notably, the number of Defendants' contacts with Texas is not determinative of the personal jurisdiction analysis; "[e]ven a single, substantial act directed toward the forum can support specific jurisdiction." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)); *see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 415-16 (5th Cir. 1993) ("Purposeful forum-directed activity—even if only a single substantial act—may permit the exercise of specific jurisdiction in an action arising from or related to such acts.").

To determine whether Defendants have minimum contacts with Texas, the Court must identify some act whereby it purposefully availed itself of the privilege of conducting activities here, thus invoking the benefits and protections of its laws. *Stroman*, 513 F.3d at 484 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (internal quotations and alterations omitted)). The defendant's conduct must demonstrate that it

11

reasonably anticipated being haled into court in Texas. *Id.* (citing *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).[1] Only two of the six jurisdictional facts Plaintiffs identify are contacts related to Plaintiffs' claims—the letters and postcards sent to Texas residents bearing the HELIXX trademark and the second website, www.helixx.net. Defendants have submitted affidavits suggesting that the other forum-related contacts are in no way related to their use of the HELIXX trademark or product line.

As to Plaintiffs' first forum-related contact, the second website, the Ninth Circuit has found that merely registering someone else's trademark as a domain name and posting a website on the Internet, without more, is not sufficient to subject a party domiciled in one state to jurisdiction in another. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-1322 (9th Cir. 1989). Further, only Defendants' employees have passwords to the website, with the exception of a hospital employee located outside of Texas. Passwords have not been provided to people living in Texas. (Reedy Supp. Aff. ¶ 2.)

Plaintiffs also allege Defendants mailed a total of six postcards and letters bearing the HELIXX mark to Texas residents. In *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006), a case involving claims of copyright infringement, violations of the Lanham Act, and trademark dilution, the Fifth Circuit found that the defendants had purposefully availed themselves of the privileges of conducting business in the forum state by placing the allegedly infringing items, through an intermediary, into the stream

---

[1] The Fifth Circuit has declined to follow the Supreme Court's plurality opinion in *Asahi*, which requires some additional action on the part of the defendant, beyond foreseeabiilty, to "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state." *Luv n'Care, Ltd.*, 438 F.3d at 469 (5th Cir. 2006) (quoting *Asahi*, 480 U.S. 102 at 112 (1987)).

of commerce where they would foreseeable end up in the forum state. The Court of

Appeals also found that the plaintiff's claims arose out of the defendant's contacts with

the forum state—copyright infringement from the products that traveled through the

stream of commerce into Louisiana—and concluded that this connection between the

allegedly infringing product and the forum state was sufficient to confer jurisdiction. The

plaintiff alleged that the presence of the defendant's products in the forum state infringed

on its copyright. The Fifth Circuit noted that, while it "had been reluctant to extend the

stream-of-commerce principle outside the context of products liability cases" it

nevertheless found jurisdiction "where the same public policy concerns that justify the

use of stream-of-commerce principle in the products liability context are present." *Id.* at

472-473 (citing *Nuovo Pignone*, 310 F.3d at 381). It noted that its reasoning applied

"with equal force" to the plaintiff's trademark dilution and Lanham Act claims. *Id.* at

473 n. 16.

The Court considers the letters and postcards sent to Texas residents to be

analogous to the products at issue in *Luv N'Care*. While the correspondence was limited

to two pieces of mail being sent to three Texas residents, and was part of a broader

mailing effort, Defendants did intentionally direct the letters containing the infringing

trademark into Texas. Plaintiffs have made a prima facie showing that these letters

establish Defendants' purposeful availment of the benefits of operating in Texas.[2]

---

[2] Other circuits have applied the effects test from *Calder v. Jones* to determine whether they have specific jurisdiction over cases arising from trademark infringement. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008); *Panavision Int'l, L.P.*, 141 F.3d at 1321-1322; *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir. 1994). While the Fifth Circuit has not applied the effects test to resolve jurisdiction over trademark disputes, it has recognized that *Calder*'s reasoning is applicable to intentional torts other than defamation, the claim at issue in Supreme Court's opinion. *See Kwik Kopy v. Byers*, 37 Fed. Appx. 90 (5th Cir. 2002) (not designated for publication) (collecting cases). The effects test requires that a tort is (1) intentional; (2) aimed at the forum state; (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Licciardello,*

### D.  Fair Play and Substantial Justice

Finally, the Court must decide whether exercising jurisdiction over Defendants would "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  In conducting the fairness inquiry, the Court examines (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.  *Luv N'Care*, 438 F.3d at 473 (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996).  Defendants contend that these factors weigh in favor of granting their Motion.  They argue that litigating the case in Texas will be a substantial burden on them because they are Ohio corporations with no offices or corporate records in Texas.  Second, they argue that Texas has no major stake in this corporation except for the fact that Plaintiffs are Texas corporations.  As to the fourth factor, they assert that it will be more efficient to try the case where records and witnesses relevant to the accusations in the Complaint are located.  Finally, Defendants concede that the fifth factor is not implicated.

The Court does not find these arguments persuasive.  Defendants do not identify how, specifically, litigating in Texas will be substantially burdensome.  The record

---

544 F.3d at 1286 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)).  Defendants do not dispute that the correspondence was intentionally sent to the three Texas residents, or that it was aimed at Texas.  The mailings were sent to Texas residents in September 2008, before Plaintiffs first contacted Defendants about possible trademark infringement.  It is possible, then, that Defendants did not know Plaintiffs would suffer harm from the mailings in Texas at the time they were sent, an ambiguity that would warrant jurisdictional discovery.  The application of the effects test could therefore mandate a different outcome than the *Luv N'Care* stream of commerce analysis, which the Court considers to be controlling.  This Court notes its agreement with the concurring opinion in *Luv N'Care* and hopes the Supreme Court will soon resolve the circuit split on this issue.

indicates that Defendants' employees have, at times, traveled to conferences in this district, and that it has some customers located in this district. As to the second factor, Texas has a strong interest in protecting its corporations from trademark infringement and dilution, particularly when the infringement occurs in the state. With respect to the fourth factor, Defendants do not identify the specific evidence or documents located in Ohio that will be necessary to the litigation. Plaintiffs further argue that their corporate documents and witnesses are located in this district. The Court does not believe that asserting jurisdiction over Defendants will offend traditional notions of fair play and substantial justice.

## III.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED**.

SIGNED at Houston, Texas, on this the _____ day of July, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**